Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1847 | **DATE** | 10/10/2003 |
| **CASE TITLE** | Dr. James G. O'Donnell vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment [38-1] is granted. This case is hereby dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | OCT 14 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | RO — courtroom deputy's initials | 03 OCT 10 PM 3:25 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DR. JAMES G. O'DONNELL, | ) |
| | ) |
| Plaintiff, | ) No. 02 C 1847 |
| | ) |
| v. | ) Judge Ruben Castillo |
| | ) |
| CITY OF CHICAGO, | ) |
| | ) |
| Defendant. | ) |

DOCKETED
OCT 14 2003

## MEMORANDUM OPINION AND ORDER

This is the third opinion issued by a district court in the ongoing litigation battle waged on a *pro se* basis by Dr. James G. O'Donnell ("O'Donnell") against the City of Chicago ("City"). Unfortunately, O'Donnell fares no better in this third opinion, which addresses his sole surviving claim in his second lawsuit against the City. O'Donnell alleges that the City unlawfully retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), by denying him the position of medical director for the Chicago Department of Public Health ("CDPH") in February 2002. The City now moves for summary judgment, claiming that O'Donnell has not made a *prima facie* showing of retaliation. In particular, the City argues that O'Donnell cannot show that he suffered an adverse employment action or that similarly situated applicants were treated more favorably. The City further argues that even if O'Donnell had made a *prima facie* showing of retaliation, his claim nevertheless fails because he cannot refute the City's legitimate, non-discriminatory reason for not hiring him. For the following reasons, the City's motion is granted. (R. 38-1.)

# RELEVANT FACTS[1]

Until August 2000 when he was fired, O'Donnell was employed by the CDPH as an osteopathic physician in several City clinics. Two months later, O'Donnell applied for the positions of medical director with the STD/HIV Prevention program and Commissioner of the CDPH. He was not hired for those positions, and he subsequently sued the City and the CDPH for discrimination arising out of these incidents. That case was dismissed for failure to state a claim in January 2002. *See O'Donnell v. Daley*, Nos. 01 C 5551, 01 C 5330, 01 C 4848, 01 C 4622, 2002 WL 100443, at *1 (N.D. Ill. Jan. 25, 2002). Meanwhile, in October 2001, O'Donnell again applied for a position of medical director with the CDPH.

Pursuant to City policy, the City is required to maintain and adhere to a detailed hiring plan to fill all governmental employment positions. The City is required to post at City Hall and on the internet notices that the City is looking to fill certain types of positions. The City accepts applications based on job title, which is a group of jobs sharing certain characteristics. Applicants may not apply for a specific position, but rather must submit applications for job titles

---

[1] Because O'Donnell did not file a proper response to Defendant's statement of undisputed facts and therefore failed to comply with Local Rule 56.1(b), we accept as true all facts set forth in Defendant's statement of material facts. *See* L.R. 56.1(b)(3)(B); *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 870 n.3 (7th Cir. 2000). We note that O'Donnell received, as required, the Local Rule 56.2 notice describing how to respond to Defendant's Rule 56.1(a) statement. (R. 39-1.) Although O'Donnell is *pro se*, and thus not held to the strict standards expected of lawyers, he made no attempt whatsoever to comply with Local Rule 56.1(b). Additionally, we have repeatedly warned O'Donnell to confine his submissions to the sole issue of retaliation, and yet he persists in deluging this Court with hundreds of pages of unsupported and/or irrelevant information. Therefore, this Court has no choice but to deem the facts set forth in Defendant's 56.1(a) statement admitted, and we will not look beyond the evidence contained within Defendant's statement. O'Donnell's failure to dispute Defendant's facts, however, does not result in an automatic grant of summary judgment in the City's favor. We still must evaluate all facts in the light most favorable to O'Donnell, the non-moving party.

within a given classification. The names of applicants who meet minimum qualifications for a title are placed on the eligible list. Just because the applicant meets the minimum qualifications, however, does not mean that an applicant is qualified to fill every position within a title that becomes vacant, nor does placement on the eligible list mean that an applicant will be considered or interviewed for any or each of the vacant positions within that title. In fact, the City's Department of Personnel ("DOP") accepts applications for professional titles continuously even when no funding has been approved for a position and whether or not there are any vacant positions.

In order to fill a position at the City, a department head must submit a formal Request for Hire form, which consists of Parts A and B. Part A of the form is forwarded to the Office of Budget and Management ("OBM") for funding. Once funding has been approved, the Part A form is sent to the DOP for approval. Only after the Part A form is approved by both the OBM and DOP may the department head begin the process of filling the position. The DOP then produces a referral list composed of eligible applicants who also meet the screening and hiring criteria set forth on the Part B form. In order to be interviewed, an applicant's name must be on the referral list. The hiring department attempts to contact each applicant on the referral list for an interview.

As a part of the hiring process, the DOP assigns a Personnel Analyst to act as a liaison between the City's administrative arms and the specific department seeking to hire a new employee. In this case, Nancy Bracomontes was the Personnel Analyst assigned to assist the CDPH with its hiring needs. Between November 2000 and February 2002, the DOP continuously sought and accepted applications for the title of medical director.

3

As noted above, O'Donnell was terminated from his position as a physician with the CDPH in August 2000. On November 8, 2000, O'Donnell submitted an application for the position of medical director. Because he met the minimum qualifications for a medical director position, he was placed on the eligible list for two years beginning in January 2001. In March 2001 O'Donnell filed an EEOC charge of discrimination alleging that his August 2000 dismissal was due to discrimination based on his race, religion and national origin. In October 2001 and January 2002, the City posted on its website a notice of Job Opportunity for the position of Medical Director of the STD/HIV Prevention and Care Programs. O'Donnell submitted an application for this position in October 2001. Although the City was actively soliciting applications during this time, the department did not interview any applicants for the position between November 2000 and February 2002. In fact, the CDPH did not even submit a Part A form for budgetary approval of this position until April 2003, and funding was not approved until June 2003. Thus, CDPH did not have the authority to fill the medical director position until it received the approved Part A form from the DOP in June 2003.

O'Donnell filed a charge of discrimination with the EEOC, alleging that the City retaliated against him for filing an earlier EEOC complaint in March 2001 by denying him the position of medical director that he had earlier applied for in October 2001. He claims that he was "passed over" for consideration for the medical director's position because the City continued to seek applications for the medical director position after he had filed his application.

O'Donnell filed the instant suit in March 2002. We dismissed the original complaint as barred by *res judicata* and collateral estoppel, but granted O'Donnell leave to amend his complaint. On November 15, 2002, O'Donnell filed an amended complaint, raising many of the

4

same claims as his initial complaint. The City again moved to dismiss, which we granted as to all claims except his retaliation claim. *See O'Donnell v. City of Chi.*, No. 02 C 1847, 2003 WL 1338027, at *1 (N.D. Ill. Mar. 17, 2003). The City now moves for summary judgment on that remaining retaliation claim.

## LEGAL STANDARDS

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This rule "mandates an approach in which summary judgment is proper only if there is no reasonably contestable issue of fact that is potentially outcome-determinative." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). In resolving a motion for summary judgment, this Court will neither decide factual disputes nor weigh conflicting evidence. *Id.* Instead, this Court limits its inquiry to whether a genuine issue of material fact exists for trial. *Id.* In doing so, we view the evidence and draw all inferences in favor of the nonmoving party. But a nonmoving party cannot survive summary judgment with a mere scintilla of evidence supporting its position; the party must present definite, competent evidence to rebut the motion. *Id.* at 437 (*citing Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997)).

## ANALYSIS

A plaintiff may establish a prima facie case of retaliation in one of two ways. First, he may present *direct* evidence of a statutorily protected activity, an adverse employment action, and a causal connection between the two. *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d

5

640, 644 (7th Cir. 2002). In this instance, the plaintiff must present evidence of "but for" causation; that is, had it not been for his protected expression he would not have suffered the adverse action of which he complains. *Id.* at 643. But "mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in an of itself to create a triable issue." *Id.* at 644. If his evidence is contradicted, the case must be tried unless the defendant presents unrebutted evidence that it would have taken the adverse employment action against the plaintiff anyway, "in which event the defendant's retaliatory motive, even if unchallenged, was not a but-for cause of the plaintiff's harm." *Id.* at 642; *see also Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989).

The second way a plaintiff may establish a *prima facie* case of discrimination is the under the indirect method, an "adaptation of McDonnell Douglas to the retaliation context," and is intended to "give the plaintiff a boost when he has no actual evidence of discrimination (or retaliation) but just some suspicious circumstances." *Stone*, 281 F.3d at 643-44. At the first stage, the plaintiff must show that: (1) he engaged in statutorily protected activity; (2) he performed his job according to his employer's legitimate expectations; (3) despite his satisfactory job performance, he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Id.* at 644; *Hilt-Dyson v. City of Chi.*, 282 F.3d 456, 466 (7th Cir. 2002). Under this method, the "plaintiff so proceeding need not show even an attenuated causal link." *Stone*, 281 F.3d at 644; *see also Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 897 (7th Cir. 2003) ("*Stone* clarifies that to establish a prima facie case of retaliation, an employee need not present proof of a causal

link between the protected expression . . . and the adverse employment action of which he is complaining.") (internal quotations omitted); *Haywood v. Lucent Techs. Inc.*, 323 F.3d 524, 531 (7th Cir. 2003).[2]

If the plaintiff establishes these elements, the burden shifts to the defendant to come forward with a legitimate, non-invidious reason for the adverse employment action. *Stone*, 281 F.3d at 644. Although the burden of production shifts to the defendant under this method, "the burden of persuasion rests at all times on the plaintiff." *Klein v. Trs. of Ind. Univ.*, 766 F.2d 275, 280 (7th Cir. 1985). Once the defendant presents a legitimate, non-invidious reason for the adverse employment action, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual. *Haywood*, 323 F.3d at 531.

In this case O'Donnell has not provided any direct evidence of retaliation. Therefore, we proceed under the indirect method outlined in *Stone*. O'Donnell's case fails because he cannot show that he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. As the City correctly points out, the record is devoid of proof that anyone was even interviewed for a medical director position during this period and it is clear that the position was not funded, and thus filled, until *after* the time period during which O'Donnell claims that the retaliation occurred. Under these circumstances we cannot conclude that other

---

[2] Despite the clear instruction from these cases that the framework articulated in *Stone* now governs the indirect method of proving retaliation, *see Rogers v. City of Chi.*, 320 F.3d 748, 755 (7th Cir. 2003) ("*Stone* provides the governing rule in this jurisdiction, a rule that makes proof of a causal nexus irrelevant"), the City nevertheless relied on the old test, which required proof of a causal link. We have relied on the new test and have disregarded the City's arguments with respect to the causal link requirement of the old test.

applicants for the medical director position who did not file EEOC charges were treated more favorably than O'Donnell.[3]

For similar reasons, even if O'Donnell had satisfied his *prima facie* burden, his retaliation claim nevertheless would fail because the City has provided a legitimate, non-discriminatory reason for not hiring O'Donnell during the period November 2000 to February 2002 and O'Donnell cannot show that the reason was pretextual. The City asserts that a medical director position for which O'Donnell applied was not funded until June 2003. Thus, the City could not, and indeed did not, hire anyone throughout the period that O'Donnell claims he was subject to retaliatory discrimination.

## CONCLUSION

O'Donnell has not satisfied his *prima facie* burden and cannot show that the City's reason for not hiring him as a medical director between November 2000 and February 2002 was pretextual. Accordingly, we grant the City's motion for summary judgment. (R. 38-1.)

ENTERED: _____

**Judge Ruben Castillo**
**United States District Court**

**Dated: October 10, 2003**

---

[3] O'Donnell suggests that Angela Griffin, an African-American physician (who in O'Donnell's opinion was totally unqualified for the job), was hired by the City during May 2002. He further argues that he would have been hired for the position had the City not retaliated against him by hiring Dr. Griffin. (R. 49, Pl.'s Mem. at 11.) He provides no competent support for these assertions, however, and therefore we do not address them.

8